IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL BEGNOCHE, | : | |
| | : | |
| Petitioner, | : | |
| v. | : | **3:15-CV-2047** |
| | : | **(JUDGE MARIANI)** |
| BRIAN THOMPSON, et al., | : | |
| | : | |
| Respondents. | : | |

| | | |
|---|---|---|
| PAUL BEGNOCHE, | : | |
| | : | |
| Petitioner, | : | |
| v. | : | **3:16-CV-2455** |
| | : | **(JUDGE MARIANI)** |
| BRIAN THOMPSON, et al., | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Pending before the Court is a Report and Recommendation ("R&R") (Case No. 3:15-CV-2047, Doc. 163; Case No. 3:16-CV-2455, Doc. 20) by Magistrate Judge Carlson in which he recommends the denial of two federal habeas corpus petitions brought by a state prisoner. Petitioner has filed Objections to the R&R. (Case No. 3:15-CV-2047, Doc. 171).[1]

The Petitioner was convicted in Pennsylvania state court for violations of state law related to the sexual exploitation of his daughter over the course of three years when the victim was between seven and ten years old. *Com. v. Begnoche*, No. 286 MDA 2014, 2015

---

[1] Cited ECF Document numbers refer to the documents as they are filed in Case No. 3:15-CV-2047 unless otherwise noted.

WL 7587202, at *1 (Pa. Super. Ct. Feb. 5, 2015). The Petitioner entered a plea of nolo

contendere on December 5, 2011. *Com. v. Begnoche*, No. 286 MDA 2014, 2015 WL

7587202, at *1 (Pa. Super. Ct. Feb. 5, 2015). No direct appeal was taken by the Petitioner

and his sentence became final in May 2012. *Com. v. Begnoche*, No. 286 MDA 2014, 2015

WL 7587202, at *1 (Pa. Super. Ct. Feb. 5, 2015).

     Since his conviction, the pro se Petitioner has filed countless untimely and extremely

lengthy filings in state and federal courts in a perpetual attempt to relitigate the charges to

which he already pled no contest.[2] On October 21, 2015, Begnoche turned to the federal

courts and filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Case

No. 3:15-CV-2047, Doc. 1). Before the Court addressed his first petition, Petitioner filed

another Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on December

12, 2016. (Case No. 3:16-CV-2455, Doc. 1).

     On April 25, 2019, Magistrate Judge Carlson issued a Report and Recommendation

("R&R") (Doc. 163) recommending that both of Petitioner's habeas petitions be denied and

---

[2] *See, e.g., Com. v. Begnoche*, No. 286 MDA 2014, 2015 WL 7587202, at *1 (Pa. Super. Ct. Feb. 5, 2015)(affirming denial of first PCRA petition); *Com. v. Begnoche,* 633 Pa. 743, 123 A.3d 330 (2015)(denying allowance of appeal); *Com. v. Begnoche*, No. 762 MDA 2015, 2015 WL 6158817, at *3 (Pa. Super. Ct. Oct. 19, 2015)(affirming denial of second PCRA petition); *Com. v. Begnoche*, 639 Pa. 393, 160 A.3d 792 (2016)(denying allowance of appeal); *Com. v. Begnoche,* No. 1393 MDA 2015, 2016 WL 2908276, at *2 (Pa. Super. Ct. May 17, 2016)(affirming denial of third PCRA petition); *Com. v. Begnoche*, No. 1638 MDA 2016, 2017 WL 1398885, at *2 (Pa. Super. Ct. Apr. 19, 2017)(affirming denial of fourth PCRA petition); *Com. v. Begnoche,* 645 Pa. 427, 428, 180 A.3d 1210 (2018)(denying allowance of appeal). In connection with his 2015 Petition, Begnoche has filed: two motions for default judgment (*see* Docs. 32, 52), three motions for summary judgment (*see* Docs. 38, 44, 73), six motions for writs of mandamus (*see, e.g.*, Docs. 45, 172, 176), two motions to disqualify the judge (*see* Docs. 6, 133); and eight motions to appoint trial counsel (*see, e.g.*, Docs. 8, 173).

that a certificate of appealability should not issue. (Doc. 163). On June 24, 2019, Petitioner

filed Objections to the Magistrate's R&R in his 2015 Habeas Case (Case No. 3:15-CV-2047,

Doc. 171). In his 2016 Habeas Petition case, in response to the R&R, Petitioner filed a

"Voluntary Dismissal by Petioner [sic]" seeking to dismiss his second habeas petition

without prejudice.[3] (Case No. 3:16-CV-2455, Doc. 21).

Upon *de novo* review of Magistrate Judge Carlson's R&R (Doc. 163), Petitioner's

Objections thereto (Doc. 171), and all relevant filings, the Court will overrule the Objections

and adopt the pending R&R. Both petitions will be denied and certificates of appealability

shall not be issued in either case.

## II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including

evidentiary hearings, and to submit to a judge of the court proposed findings of fact and

recommendations for the disposition" of certain matters pending before the Court.  28 U.S.C.

§ 636(b)(1)(B).  If a party timely and properly files a written objection to a Magistrate Judge's

Report and Recommendation, the District Court "shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which objection

is made."  *Id*. at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011);

M.D. Pa. Local Rule 72.3.

---

[3] Because the Respondents filed an answer to Petitioner's habeas petition (*See* Partial Answer to Petition for Writ of Habeas Corpus, Case No. 3:16-CV-2455, Doc. 16) and did not stipulate to voluntary dismissal, the 2016 Petition cannot be voluntarily dismissed without a court order. Fed. R. Civ. P. 41(a)(1)(A).

Here, Petitioner raises fifteen Objections to the Magistrate Judge's R&R, most of which are repetitive and have no factual or legal bases. Petitioner objects to the consolidation of his petitions and the application of the statute of limitations, his lack of access to the documents cited in the R&R, his lack of counsel, the speed at which his case was reviewed, and the Magistrate Judge's alleged bias against Petitioner. His Objections also put forth a number of allegations that are merely an attempt to relitigate the entirety of the habeas petition, including: the government deliberately destroyed exculpatory evidence, there was insufficient evidence to support his conviction, he has an alibi, his extradition was illegal and amounted to kidnapping, he had ineffective assistance of counsel before and after his conviction, and his plea was involuntary. The Court will address all of these Objections in turn.

### A. Objection 1: Consolidation and Statute of Limitations

Petitioner's first Objection to the R&R is to Magistrate Judge Carlson addressing both of his Habeas Petitions in one R&R. (Doc. 171, at 1–2). Petitioner argues:

> Especially by using the pleadings and timing of the filings in one Writ of Habeas Corpus to dismiss the other Writ Petition. These are two seperately [sic] filed Writ Petitions that hold unrelated "Core Issues" of their Pleadings and the application of Facts and Federal' Laws cannot be considered equally under the AEDPA's novelty of Federal Law and Statute 28 U.S.C. § 2244(d)(1) Timeliness of Petition.

(*Id.* at 1).

Petitioner cites to no precedent or law that would require the Court to separately address his serial filings of multiple federal habeas corpus petitions, which are based on the

same conviction. In fact, the Supreme Court has suggested disjointed petitions are an

abuse of the writ and should not be entertained:

> [I]f a prisoner deliberately withholds one of two grounds for federal collateral
> relief at the time of filing his first application, in the hope of being granted two
> hearings rather than one or for some other such reason, he may be deemed to
> have waived his right to a hearing on a second application presenting the
> withheld ground…Nothing in the traditions of habeas corpus requires the
> federal courts to tolerate needless piecemeal litigation, or to entertain collateral
> proceedings whose only purpose is to vex, harass, or delay.

*Rose v. Lundy*, 455 U.S. 509, 521, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982).

Petitioner cannot demonstrate any credible reason why these petitions would need

to be addressed separately when they both arise from one conviction and the same

underlying set of facts. The R&R addresses all twenty-five grounds of his 2015 Petition and

the eight grounds of his 2016 Petition. (*See* R&R, Doc. 163, at 28 (2015 Habeas Petition

Grounds 11, 14, 17-18, 20-21), 30–33 (2015 Habeas Petition Grounds 1-7, 9-10, 15-16),

33–39 (2015 Habeas Petition Grounds 12-13, 23), 39–41 (2015 Habeas Petition Grounds

14, 19, 22, 25), 41–44 (2015 Habeas Petition Grounds 8, 24), 44–51 (2016 Habeas Petition

Grounds 1-8, dismissing as untimely)).

The Court can only assume Petitioner's first objection is based on his belief that his

second petition is not time-barred. Petitioner appears to be attempting to argue that his first

2015 Petition tolled his second 2016 Petition. Petitioner's argument is wholly incorrect.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies a one-year

statute of limitations to applications for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court. 28 U.S.C. § 2244(d)(1). A properly filed

application for State post-conviction or other collateral review will toll the statute of

limitations for a writ of habeas corpus. 28 U.S.C. § 2244(d)(2). However, absent the grant of

a stay by the District Court to allow a petitioner to present his unexhausted claims to the

state court in the first instance, the statute of limitations will not be tolled during the

pendency of a petitioner's first federal habeas petition. *Rhines v. Weber*, 544 U.S. 269, 274,

125 S.Ct. 1528, 1533, 161 L.Ed.2d 440 (2005); *Duncan v. Walker*, 533 U.S. 167, 172, 121

S.Ct. 2120, 2124, 150 L.Ed.2d 251 (2001).

Petitioner entered a no contest plea and was sentenced on December 5, 2011. (Tr.

Plea and Sentencing, Doc. 162). Because Petitioner did not seek direct appeal within thirty

days of his conviction, his sentence became final on January 4, 2012. *See* 42 Pa.C.S. §

9545(b)(3); 28 U.S.C. § 2244(d)(1)(A). After 309 days elapsed, on November 8, 2012,

Petitioner filed his first Pennsylvania Post Conviction Relief Act ["PCRA"] petition, stopping

the statute of limitations from running. (*See* 28 U.S.C. § 2244(d)(2); Doc. 161, at 201-47).

When the Pennsylvania Supreme Court denied his appeal on August 4, 2015 and his

motion for reconsideration on September 15, 2015 (*Com. v. Begnoche*, 633 Pa. 743, 123

A.3d 330 (2015)), the statute of limitations began to run again, allowing him 56 days, or until

November 10, 2015, to file his initial federal petition. *See* 28 U.S.C. § 2244(d)(1).

Petitioner filed his first federal habeas corpus petition on October 21, 2015. (Doc. 1).

Over a year after filing his first federal petition, on December 12, 2016, Petitioner filed a

second federal habeas corpus petition. (Case No. 3:16-CV-2455, Doc. 1).[4] The 2015 federal

habeas petition did not toll the statute of limitations for the 2016 federal habeas petition.

*Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; *Duncan v. Walker*, 533 U.S. at 172, 121 S.Ct.

2120. Even assuming the most generous timeline, the second petition, filed on December

12, 2016, was filed over one year after the statute of limitations expired on November 10,

2015. Therefore, the R&R is correct, the second petition is unquestionably outside the

statute of limitations. (Doc. 163, at 46).

　　Petitioner further argues that equitable tolling is appropriate in this case because he

was pursuing a "Motion to Vacate Judgment of Sentence And/Or…Set Aside His Mandatory

Minimum Sentence Pursuant to *Alleyne v. United States*, Nunc Pro Tunc." (Doc. 171, at 2).

Equitable tolling is only appropriate where a petitioner has "in some extraordinary way…

been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corr.*,

145 F.3d 616, 618 (3d Cir. 1998). The petitioner must demonstrate that he exercised

"reasonable diligence" when bringing the claim, "mere excusable neglect is not sufficient."

*Id.* at 618–19.

　　Petitioner provides no clear reason why equitable tolling would be appropriate in this

case. Petitioner fails to show any extraordinary circumstances that caused him to file his

second federal habeas petition a full year after the statute of limitations expired. His claim

---

[4] The Court notes Petitioner failed to seek authorization to file his second federal habeas petition from the Third Circuit Court of Appeals. 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.").

that he was pursuing an untimely second state PCRA petition ("Motion to Vacate

Judgment…") is not sufficient to demonstrate that he was prevented from asserting his

rights in an *extraordinary* way. *Com. v. Begnoche*, No. 1393 MDA 2015, 2016 WL 2908276,

at *1 (Pa. Super. Ct. May 17, 2016)(affirming the dismissal of Petitioner's second PCRA

petition as untimely). A state petition must be "properly filed" in order to toll the statute of

limitations. 28 U.S.C. § 2244(d)(2). Untimely PCRA Petitions do not toll the statute of

limitations for a federal habeas corpus petition. *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir.

2001)(defining "properly filed" as "timely"); *Douglas v. Horn,* 359 F.3d 257, 263-64 (3d Cir.

2004)(holding tolling inappropriate where petitioner filed untimely *nunc pro tunc* petition).

　　　　Most importantly, as Magistrate Judge Carlson stated, in a case where Petitioner

was convicted of sexually assaulting his daughter, "[T]here is also an important human

dimension to the statute of limitations. To ignore the limitations period prescribed by law,

and permit Begnoche to belatedly re-open this case, would compel his victim to, once again,

experience the trauma of these events." (Doc. 163, at 47).

　　　　Petitioner's first Objection is unsupported and will be overruled.

## B. Objection 2: R&R's Use of Document 161

　　　　Petitioner's second Objection to the R&R is based on his allegation that he did not

have access to the documents relied on by Magistrate Judge Carlson's R&R, specifically

Document 161. (Doc. 171, at 2–3). Petitioner additionally claims that through "government

inference [sic] his legal documents were searched and a few weeks later relator discovered

several missing Legal Documents that included this over (100) pages of Superior Court Appellate Brief." (*Id.* at 3).

Petitioner has no relevant legal basis for this Objection. The referenced document is the entirety of the Pennsylvania Superior Court's docket of Petitioner's PCRA claim–a public record that the Court is entitled to review. (*See* Docs. 160–162). As this was the docket for his own PCRA Petition, Petitioner would have had access to it in the same way that he has access to the docket in this case. Petitioner's unsubstantiated claim that his 100-page brief that he submitted to the Superior Court was apparently confiscated is simply irrelevant. Petitioner's second Objection is overruled.

### C. Objection 3: Lack of Counsel in Federal Habeas Proceedings

Petitioner's third Objection is based on his lack of counsel. (Doc. 171, at 4–5). Petitioner argues that due to the complexity of his habeas petition he should be appointed counsel. (*Id.*). As has been explained in response to Petitioner's eight previous motions to appoint counsel, he is not entitled to appointed counsel. (*See* Case No. 3:15-CV-2047, Docs. 10, 21, 43, 68, 85, 97, 145; Case No. 3:16-CV-2455, Doc. 15).

It is well-established that prisoners do not have a constitutional right to counsel in habeas corpus proceedings. *Coleman v. Thompson*, 501 U.S. 722, 755, 111 S. Ct. 2546, 2567, 115 L. Ed. 2d 640 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993, 95 L. Ed. 2d 539 (1987). The Court may, in its discretion, appoint counsel to a financially eligible person who is seeking habeas relief if "the interests of justice so require."

18 U.S.C. § 3006A(a)(2)(B). The Third Circuit has stated, "As a threshold matter, a district

court must assess whether the claimant's case has some arguable merit in fact and law."

*Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). If the case has merit, the Court

must analyze a list of other factors, including:

> 1. the claimant's ability to present his or her own case;
> 2. the difficulty of the particular legal issues;
> 3. the degree to which factual investigation will be necessary and the ability of the claimant to pursue investigation;
> 4. the claimant's capacity to retain counsel on his or her own behalf;
> 5. the extent to which the case is likely to turn on credibility determinations; and
> 6. whether the case will require testimony from expert witnesses.

*Id.* (quoting *Tabron v. Grace*, 6 F.3d 147, 155–57 (3d Cir. 1993).

As demonstrated in the R&R, Begnoche's Petitions at issue do not have merit. (*See*

*generally* Doc. 163). Assuming only for the purposes of analysis that the Petition has merit,

Petitioner has not demonstrated any circumstances that justify appointing counsel. (*See*

Doc. 171, at 4–5). Petitioner was capable of litigating his claim pro se as he demonstrated

by representing himself throughout his multiple PCRA cases. (*See generally* Doc. 161). He

also was able to timely file his initial federal habeas petition and set forth the grounds for

relief. (*See* Doc. 1). Moreover, his petition did not present complex factual or legal issues.

Petitioner was familiar with the facts of his case, had the ability to investigate any facts

despite his incarceration, and the issues presented did not require expert testimony.

Petitioner has not presented any grounds to show he was prejudiced by prosecuting

this case on his own. Therefore, Petitioner's third Objection is overruled.

### D. Objection 4: Speed of R&R Decision

Petitioner's fourth Objection relates to the speed at which Magistrate Judge Carlson wrote the R&R. (Doc. 171, at 5–9). Petitioner alleges that Magistrate Judge Carlson ordered the Superior Court's record be filed on April 22, 2019 and his R&R was filed on April 25, 2019. (*Id.* at 5). Petitioner claims Magistrate Judge Carlson could not have reviewed the record and written the R&R in such a short time period. (*Id.* at 6).

The Court finds Magistrate Judge Carlson's R&R is thorough, analytically sound and indicative of the Magistrate Judge's consideration of the state court proceedings. Petitioner's fourth Objection has no merit.

### E. Objections 5 and 7: *Brady* Violations

Petitioner's fifth and seventh Objections are both related to Petitioner's unsubstantiated allegation that the Government deliberately destroyed exculpatory evidence (Doc. 171, at 9-10) and covered up the destruction of such evidence (*Id.* at 19-28). The Court assumes Petitioner is attempting to assert a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83, 86, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). These *Brady* Objections will be addressed together. As explained in the R&R, these arguments were not raised in his PCRA petition and are therefore not exhausted.

An application for a writ of habeas corpus pursuant to Section 2254 will not be granted unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement allows the State "the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights."

*Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004). In order

to satisfy the exhaustion requirement, the claims included in the habeas petition must be

"fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509,

512, 30 L.Ed.2d 438 (1971). To "fairly present" a claim, a petitioner must present its "factual

and legal substance to the state courts in a manner that puts them on notice that a federal

claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). Only

claims that are the "substantial equivalent" of those presented in state courts are exhausted.

*Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 543 (3d Cir. 2014) "The

habeas petitioner bears the burden of proving that he has exhausted available state

remedies." *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993). Habeas petitions that

present both exhausted and unexhausted claims must be dismissed. *Rose*, 455 U.S. at 515;

*but see Rhines*, 544 U.S. at 278, 125 S.Ct. 1528 (noting an exception if the district court

issues a stay of the proceedings to allow a petitioner to exhaust his claim in state court).

Relatedly, the failure to exhaust a federal claim in the state appellate courts bars the

consideration of that claim in federal court by means of habeas corpus because it has been

procedurally defaulted. *Cristin v. Brennan*, 281 F.3d 404, 410 (3d Cir. 2002). The doctrine of

procedural default bars federal habeas relief when "a state court declined to address a

prisoner's federal claims because the prisoner had failed to meet a state procedural

requirement." *Coleman*, 501 U.S. at 730, 111 S. Ct. 2546. The failure to present federal

habeas claims to the state courts in a timely fashion will result in a procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999).

Petitioner entered a plea of nolo contendere in December 2011. He did not take a direct appeal from that plea sentence, but did file a PCRA petition in state court on November 8, 2012. In his state PCRA petition, Petitioner only raised the following four claims: (1) a vague claim that his constitutional rights were violated, (2) an ineffective assistance of counsel claim, (3) a claim that his plea was involuntary, and (4) a claim that his pro se work product was seized while he was incarcerated in Connecticut. (Mem. Order, Ct. Common Pleas, Doc. 161, at 478–81). This means that most of the two dozen claims in his federal habeas petition are both unexhausted and procedurally defaulted as they were never fairly presented to the state courts. This includes Petitioner's claims that the government intentionally destroyed exculpatory evidence and attempted to cover it up. Petitioner did not present this claim or any claim that could be considered its substantial equivalent in his state PCRA petition. He also did not take a direct appeal so these claims were never fairly presented to the state courts at any point. Therefore, Petitioner's claims regarding the destruction of exculpatory evidence are not exhausted.

In addition to the claims being exhausted, Petitioner has procedurally defaulted these claims. In order to assert a collateral attack on a conviction in Pennsylvania, a petitioner must file for PCRA relief within one year of the date the judgment becomes final. 42 Pa.Cons.Sta. § 9545(b)(1). Petitioner's judgment became final on January 4, 2012 when

the time to seek direct review expired. (*See, e.g.,* Doc. 161, at 149). The Petitioner may not now, eight years later, raise these issues in a state PCRA petition. (*See supra* note 2). Therefore, these two *Brady* claims are procedurally defaulted.

Moreover, these claims are not cognizable because Petitioner waived them when he entered a plea of nolo contendere in 2011. (*See* Written Colloquy, Doc. 161, at 146–50; Tr. Plea and Sentencing, Doc. 162).

Under Pennsylvania law, a guilty plea "constitutes a waiver of all nonjurisdictional defects and defenses." *Com. v. Jones*, 593 Pa. 295, 308, 929 A.2d 205, 212 (2007)(quoting *Com. v. Montgomery*, 485 Pa. 110, 401 A.2d 318, 319 (1979). The Third Circuit has similarly noted, "It is well established that a criminal defendant's unconditional, knowing and voluntary plea of guilty waives all non-jurisdictional issues." *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007). "In terms of its effect upon a case, a plea of nolo contendere is treated the same as a guilty plea." *Com. v. Lewis*, 791 A.2d 1227, 1230 (2002); *see also United States v. Adedoyin*, 369 F.3d 337, 344 (3d Cir. 2004)("[A] plea of nolo contendere has the same legal consequences as a plea of guilty and results in a conviction."). Similar to a defendant who pleads guilty, "a defendant who pleads nolo contendere waives all defects and defenses except those concerning the jurisdiction of the court, legality of sentence, and validity of plea." *Com. v. Kraft*, 1999 Pa. Super 231, 739 A.2d 1063, 1064 (1999).

A *Brady* violation is not a jurisdictional issue, and therefore, would be waived when a defendant enters a plea of guilty. *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct.

1602, 1608, 36 L. Ed. 2d 235 (1973)("When a criminal defendant has solemnly admitted in open court that he is in fact guilty…he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

As long as Petitioner's nolo contendere plea was unconditional, knowing and voluntary, Petitioner waived all non-jurisdictional issues, including alleged *Brady* violations when he entered his plea in 2011. Petitioner cannot successfully challenge the validity of his plea in this case.

A habeas petitioner seeking to challenge the voluntary nature of his plea "faces a heavy burden." *Lesko v. Lehman*, 925 F.2d 1527, 1537 (3d Cir. 1991). A state court's conclusion regarding the voluntary nature of a plea is "entitled to a presumption of correctness." *Siers v. Ryan*, 773 F.2d 37, 42 (3d Cir. 1985)(citing 28 U.S.C. § 2254(d)).

The Dauphin County Court of Common Pleas and the Pennsylvania Superior Court both held that Petitioner's plea was unconditional, knowing and voluntary. (*See* Mem. Order, Ct. Common Pleas, Doc. 161, at 481-83; *Com. v. Begnoche*, No. 286 MDA 2014, 2015 WL 7587202, at \*2 (Pa. Super. Ct. Feb. 5, 2015)). These findings are presumed to be correct.

The voluntary nature of Petitioner's plea is demonstrated through his written plea and his sworn plea colloquy in front of the court. (*See* Written Plea, Doc. 161, at 146–50; Tr. Plea and Sentencing, Doc. 162). During the sworn plea colloquy, the Commonwealth read the essential terms of the plea agreement. (Tr. Plea and Sentencing, Doc. 162, at 2:8-25). Petitioner testified he reviewed the agreement with counsel, he understood the charges he

was facing and all the terms of the agreement, and had no questions about the agreement.

(*Id.* at 3:15–4:6). Petitioner further testified that he understood the constitutional rights,

including appellate rights, that he would be relinquishing:

> MS. TAYLOR: And, sir, you understand by pleading no contest today you're
> giving up certain constitutional rights, including your right to have a trial, to call
> witnesses, to hear the Commonwealth's witnesses, to decide whether you,
> yourself, wanted to testify. You certainly wouldn't be required to.
> By pleading no contest we won't have a trial and you'll be entering your plea
> today. Do you understand those things?
> THE DEFENDANT: Yes.
> MS. TAYLOR: You understand that you're also severely limiting your appellate
> rights?
> THE DEFENDANT: Yes.
> MS. TAYLOR: On the third page of this document, is this your signature?
> THE DEFENDANT: Yes.
> MS. TAYLOR: Do you have any questions about this form or the negotiated
> plea agreement as I've outlined it for the Court?
> THE DEFENDANT: No.

(*Id.* at 4:7–5:1).

After listening to the Commonwealth's recitation of the evidence against him, the

Petitioner entered a plea of "No contest." (*Id.* at 5:2-23). The Court, then, ensured the

Petitioner understood the no contest plea would be treated as a guilty plea:

> THE COURT: Just some questions. Sir, do you understand that when you
> plead no contest to a charge you are, in essence, conceding, agreeing that if
> the case went to trial there would be sufficient evidence to prove you're guilty
> beyond a reasonable doubt. Do you understand that?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And do you understand that when you plead no contest, for
> sentencing purposes I must treat that just as if you plead guilty. Do you
> understand that?
> THE DEFENDANT: Yes, Your Honor.

THE COURT: And you understand that when you plead no contest it's a conviction on your record just as if you had plead guilty. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you also understand that when you plead no contest it is a conviction and it counts toward any prior record score for crimes committed in the future. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

(*Id.* at 6:1-20).

The following exchange occurred between the Court and Petitioner, further

confirming the voluntary nature of Petitioner's plea:

THE COURT: Very well. Okay. All right, sir. You have the opportunity to speak prior to sentencing. Is there anything you wish to say?

THE DEFENDANT: I just want to say, Your Honor, a lot of collateral damaged [sic] occurred to this, and I made a lot of mistakes but they didn't sum up to the inflammatory allegations. That's why I really requested the nolo plea.

And I could never put my daughter on the stand to be in front of the Court to have to deal with all this and sort it out in public. And I—that's the reason I'm taking a plea like that, because I'm not dealing with everybody going through more hell. There's enough collateral damage. I have three children in school, in college that I was very successful with. And I do not—

THE COURT: All right, sir. Let's—let's go back. Let's discuss this. Let's make it perfectly clear. That if you plead nolo contendere, if you plead no contest you are agreeing—

THE DEFENDANT: Yep.

THE COURT:—that if the case went to trial the Commonwealth would be able to prove you're guilty beyond a reasonable doubt. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Very well. And do you think it's in your best interest to plead no contest to this charge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you realize that you're getting a sentence of 10 to 20 years?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you are doing this voluntarily and of your own free will?

THE DEFENDANT: Yes, Your Honor.

17

THE COURT: And you've had an opportunity to discuss this with Mr. Muller, your attorney?
THE DEFENDANT: Yes.
THE COURT: And it's your decision to still enter the no contest plea in this case?
THE DEFENDANT: Yes, Your Honor.

(*Id.* at 7:16–9:1). In specifically explaining that he was choosing to enter a plea of nolo contendere in order to prevent his daughter from testifying in court, Petitioner proved that he understood the plea colloquy and that he entered his plea voluntarily.

As the state courts and the R&R concluded, these proceedings confirm that Petitioner's plea was unconditional, knowing and voluntary. (*See* Mem. Order, Ct. Common Pleas, Doc. 161, at 481-83; *Com. v. Begnoche*, No. 286 MDA 2014, 2015 WL 7587202, at *2 (Pa. Super. Ct. Feb. 5, 2015); R&R, Doc. 163, at 33–39). Therefore, the *Brady* violations that Petitioner seeks to assert were waived when he entered a plea of nolo contendere. Petitioner's fifth and seventh Objections will be overruled.

## F. Objection 6: Insufficient Evidence

Petitioner's sixth Objection alleges that there was insufficient evidence to support his conviction. (Doc. 171, at 11–19). To the extent that this Objection attempts to assert a *Brady* violation, the Court has already explained that such a claim is unexhausted and waived. (*See supra*). To the extent that the Petitioner intended to raise a separate claim, the Court will address that claim below.

Petitioner's claim regarding the weight and sufficiency of the evidence used to convict him is unexhausted and procedurally defaulted. In his state PCRA petition,

Petitioner only raised the following four claims: (1) a vague violation of his constitutional

rights, (2) ineffective assistance of counsel, (3) involuntary plea, and (4) seizure of pro se

work product. (Mem. Order, Ct. Common Pleas, Doc. 161, at 478–81). None of the four

claims presented to the state courts is the substantial equivalent of a claim that the

conviction was unsupported by sufficient evidence. As discussed *supra* it is now too late for

Defendant to raise this claim in state court in a state PCRA petition, so it is also procedurally

defaulted.

Petitioner's claim that there was insufficient evidence to convict him was additionally

waived when he entered a plea of nolo contendere. *United States v. McGill,* 128 F. Supp. 3d

863, 868 (E.D. Pa. 2015)("By entering a nolo plea, a defendant waives any procedural rights

that have a 'direct connection to the determination of [the] defendant's guilt or innocence.'").

As explained *supra,* when asked if he understood that his plea meant he conceded that

there was sufficient evidence to prove guilt beyond a reasonable doubt, Petitioner replied,

"Yes, Your Honor." (Doc. 162, at 6:1-7). The Court even asked Petitioner a second time,

"Let's make it perfectly clear. That if you plead nolo contendere, if you plead no contest you

are agreeing…that if the case went to trial the Commonwealth would be able to prove you're

guilty beyond a reasonable doubt. Do you understand that?" (*Id.* at 8:2-9). The Petitioner

again said, "Yes, Your Honor." (*Id.* at 8:10).

Therefore, Petitioner's sixth objection is unexhausted, procedurally defaulted, and

has already been waived.

## G. Objections 8 and 9: Alibi

In Petitioner's eighth and ninth Objections, he attempts to relitigate his conviction by presenting an alleged alibi. (Doc. 171, at 28–40). Petitioner argues that on the date of the offense listed on the arrest warrant–January 5, 2005–he was incarcerated in Connecticut. (*Id.* at 28). Petitioner argues that his defense was prejudiced by an "unreasonable departure from charging language" because the alleged dates of the offenses were later changed to "on or about October 2005 through October 2009." (*Id.* at 32).

For the same reasons as Petitioner's previous Objections, these Objections are unexhausted, procedurally defaulted and waived by Petitioner's nolo contendere plea.

None of the four claims fairly presented to the state courts is the substantial equivalent of Petitioner's alibi. (*See* Mem. Order, Ct. Common Pleas, Doc. 161, at 478–81). As discussed *supra* it is now too late for Defendant to raise this claim in state court in a state PCRA petition, so it, too, is procedurally defaulted.

Furthermore, as a non-jurisdictional issue, Petitioner's claim regarding the dates on the arrest warrant and the indictment was waived when he entered a plea of nolo contendere. As explained *supra,* when Petitioner was asked if he conceded that there was sufficient evidence to prove he was guilty beyond a reasonable doubt, Petitioner replied in the affirmative, twice. (Doc. 162, at 6:1-7; 8:2-10). Petitioner never mentioned this alleged alibi during his plea colloquy, in a direct appeal, or in his state PCRA petitions. (*See generally* Tr. Plea and Sentencing, Doc. 162; Mem. Order, Ct. Common Pleas, Doc. 161, at

477–87; *Com. v. Begnoche*, No. 286 MDA 2014, 2015 WL 7587202, at *1 (Pa. Super. Ct. Feb. 5, 2015)). Petitioner's alleged alibi especially lacks credibility in light of the knowing and voluntary nature of his initial plea of no contest. This is not a case where new exculpatory evidence has come to light; Petitioner would have had knowledge of the underlying facts of his alleged alibi before entering his no contest plea. He did not present this defense at that time and the Court will not evaluate the merits of it now.

Therefore, Petitioner's eighth and ninth Objections are overruled because Petitioner failed to exhaust, the claims are procedurally defaulted, and the Petitioner waived them when he entered a plea of no contest.

### H. Objection 10: Unlawful Extradition

Petitioner's tenth Objection presents five arguments in response to Magistrate Judge Carlson's analysis of Petitioner's claim that his extradition from Connecticut to Pennsylvania violated his constitutional rights: (1) Petitioner presented a timely challenge to extradition, (2) his counsel refused to challenge the extradition or the government's alleged interference in his challenge to the extradition, (3) he had an alibi for the date of the offense listed on the arrest warrant, (4) the date of the offense on the arrest warrant did not match the date of the offense on the indictment, and (5) his counsel was ineffective as he refused to challenge his extradition as illegal kidnapping. (Doc. 173, at 40–55).

Petitioner presents no credible basis to support his conclusion that his extradition was tantamount to kidnapping. (*See id.*). Legal precedent establishes that Petitioner's attempt to set aside his conviction is meritless.

Illegal extradition is not recognized as a ground for habeas corpus relief. *U.S. ex rel. Owens v. Russell*, 260 F. Supp. 638, 638 (M.D. Pa. 1966); *U.S. ex rel. Kelly v. Fullam*, 224 F. Supp. 492, 494 (E.D. Pa. 1963). The Supreme Court has held, "[T]he power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a forcible abduction." *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S. Ct. 509, 511, 96 L. Ed. 541 (1952); *see also Shack v. Warden of Graterford Prison*, 593 F. Supp. 1329, 1331 (E.D. Pa. 1984), *aff'd sub nom. Shack v. Attorney Gen. of State of Pennsylvania*, 776 F.2d 1170 (3d Cir. 1985)("Supreme Court and Third Circuit precedents establish that illegal extradition does not deprive the receiving sovereign of personal jurisdiction over criminal defendants so transmitted."). Due process of the law is satisfied when the defendant is fairly apprised of the charges against him and is afforded a fair trial. *Frisbie*, 342 U.S. at 522, 72 S. Ct. 509. "There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." *Id.*

Petitioner was not denied due process of the law during his prosecution in Pennsylvania. He knew of the charges against him and entered an unconditional, knowing and voluntary plea of no contest to those charges. (*See* Tr. Plea and Sentencing, Doc. 162).

The Magistrate Judge correctly found Petitioner cannot overturn his conviction now because he was brought to trial against his will. Petitioner's tenth Objection is overruled.

## I. Objections 11, 12, 13, 14: Ineffective Assistance of Trial Counsel and PCRA Counsel

Petitioner's eleventh, twelfth, thirteenth, and fourteenth Objections all relate to his claim that he had ineffective assistance of counsel at the trial level and when filing his state PCRA petitions. Petitioner cannot meet the high standard required to prove his Sixth Amendment rights were violated.

In order to state a claim for ineffective assistance, the defendant must show: (1) the defense counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000)("[T]he Pennsylvania standard judging ineffectiveness claims was identical to the ineffectiveness standard enunciated by the United States Supreme Court in *Strickland*."). The Supreme Court has held that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). To show a counsel's performance was deficient, the petitioner must show counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. In a case where a petitioner is seeking to challenge his plea, in order to prove prejudice the petitioner must show that "there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S. Ct. 366.

A defendant seeking to prove his attorney's performance was deficient faces a heavy burden as the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S. Ct. 2052. "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681–82 (3d Cir. 2006); see also Strickland, 466 U.S. at 690, 104 S.Ct. 2052 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

If a petitioner cannot prove one of the prongs, the petitioner's ineffective assistance claim must fail. Strickland, 466 U.S. at 687, 104 S.Ct. 2052 ("Unless a defendant makes both showings, it cannot be said that the conviction...resulted from a breakdown in the adversary process that renders the result unreliable.").

Petitioner contends that his trial counsel's performance was deficient in a number of ways, including: counsel refused to withdraw Petitioner's no contest plea after sentencing (Doc. 171, at 56, 91); counsel did not file a direct appeal (Id. at 56, 91–92); counsel did not inform him about the burdens placed on the Commonwealth in a criminal trial (Id. at 65, 90–91); counsel told him he would only receive one plea agreement, forcing him to accept the agreement (Id. at 66); counsel withheld evidence of malicious prosecution (Id. at 67);

counsel allowed too many continuances by the Commonwealth, violating his right to a speedy trial (*Id.* at 68); counsel refused to postpone the trial after Petitioner told counsel that counsel was unprepared for trial and his parents would not have time to travel from Connecticut to Pennsylvania (*Id.* 86–87); counsel refused to challenge his extradition (*Id.* at 69–70); counsel refused to file a motion to dismiss all charges (*Id.* at 71); and counsel colluded with the government in withholding exculpatory evidence pertinent to his state PCRA petition (*Id.* at 94).

Petitioner's claims that counsel forced him into an unknowing or involuntary plea without discussing his rights can be summarily rejected. As discussed *supra,* Petitioner's plea was found to be unconditional, knowing and voluntary. Petitioner signed a written "Nolo Contendere Colloquy," which informed Petitioner of all the rights afforded to criminal defendants at trial, the burden that is placed upon the prosecution, and that his plea would waive all of his trial rights. (Doc. 161, at 146–149). Petitioner's written colloquy affirms, "I have discussed my case with my attorney and am satisfied with his representation in these proceedings." (*Id.* at 148). By signing this colloquy, Petitioner agreed, "I have read the above document in its entirety and I understand its full meaning," and "I am satisfied that my plea is voluntarily made and in my best interests, and am therefore entering my plea of no contest." (*Id.* at 148). In addition, when Petitioner entered a plea of no contest in court, Petitioner testified he reviewed the agreement with counsel, he understood the charges he was facing and all the terms of the agreement, and had no questions about the agreement.

(Tr. Plea and Sentencing, Doc. 162, at 3:15–4:6). Petitioner further testified he understood the rights that he would be waiving and that his plea was entered "voluntarily and of [his] own free will." (*Id.* at 4:7–5:1; 7:16–9:1).

Many of Petitioner's claims fail the first prong of the *Strickland* test because counsel's performance was within the wide range of reasonable professional assistance. All of the following claims made by Petitioner are related to counsel's trial strategy: the suggestion Petitioner accept a plea agreement (Doc. 171, at 66), the decision not to present alleged evidence of malicious prosecution (*Id.* at 67) or illegal extradition (*Id.* at 69–70), concurring with requests for continuances (*Id.* at 68), the decision to not seek postponement of the trial (*Id.* 86–87), and the decision not to move to dismiss all charges (*Id.* at 71). When evaluating strategy, the Court must presume that counsel's conduct falls within the wide range of reasonable professional assistance; the burden is on the petitioner to prove otherwise. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052; *Rolan*, 445 F.3d at 681–82. Petitioner has presented no credible assertion that these decisions made by counsel are objectively unreasonable. Moreover, Petitioner cannot claim his Sixth Amendment rights were violated because counsel failed to pursue meritless defenses. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). None of these vague contentions can support Petitioner's ineffective assistance of counsel claim.

Petitioner also cannot credibly claim that his counsel was ineffective because he did not seek a direct appeal. Counsel's advice not to seek a direct appeal is objectively

reasonable considering the Petitioner limited his appellate rights when he entered a plea of

nolo contendere. (*See* Written Colloquy Doc. 161, at 147 ("I understand that when anyone

pleads no contest, the only things that can be raised on appeal are the voluntariness of the

plea, the jurisdiction of this court to hear the plea, and the legality of whatever sentence is

imposed."); Tr. Plea and Sentencing, Doc. 162, at 4:7–5:1 ("MS. TAYLOR: You understand

that you're also severely limiting your appellate rights? THE DEFENDANT: Yes.")).

Therefore, Petitioner has not met his burden to prove that counsel's performance was

deficient.

    Moreover, none of Petitioner's countless allegations regarding the ineffective

assistance of counsel satisfies the second prong of the *Strickland* test. In order to satisfy the

prejudice prong, Petitioner would have to show a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59, 106 S. Ct. 366.

    When Petitioner entered his plea, he testified under oath:

    And I could never put my daughter on the stand to be in front of the Court to
    have to deal with all this and sort it out in public. And I—that's the reason I'm
    taking a plea like that, because I'm not dealing with everybody going through
    more hell. There's enough collateral damage.

(Tr. Plea and Sentencing, Doc. 162, at 7:20-24).

    As Magistrate Judge Carlson emphasized, Petitioner's statement that he would not

want to put his daughter through a trial proves "the decision to plead was based upon

considerations that were entirely independent of counsel's advice or performance." (Doc. 163, at 42). Petitioner cannot demonstrate his counsel's performance caused him prejudice.

Petitioner has not met his burden to prove either prong of the *Strickland* test and therefore his ineffective assistance of trial counsel claim was correctly denied by the Magistrate Judge.

Petitioner next claims that he was not provided PCRA counsel and his PCRA counsel provided him ineffective assistance of counsel. (Doc. 171, at 56–58, 94–97). The Court initially notes that Petitioner's claim that he was not appointed PCRA counsel is categorically untrue and contradicts his own contention that his PCRA counsel was ineffective. (*See* Entry of Appearance, Doc. 161, at 356; Pet. to Withdraw as Counsel, Doc. 161, at 365; Order Granting Pet. to Withdraw, Doc. 161, at 391).

Pursuant to Section 2254, Petitioner's allegation that his PCRA counsel was ineffective is not cognizable, "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). *See also Lambert v. Blackwell,* 387 F.3d 210, 247 (3d Cir. 2004)("[H]abeas proceedings are not the appropriate forum…to pursue claims of error at the PCRA proceeding."); *Holman v. Gillis,* 58 F.Supp. 2d 587, 597 (E.D. Pa. 1999)("[A] claim of ineffective assistance of PCRA counsel is not cognizable in a federal habeas corpus petition."). The Sixth Amendment right to counsel does not extend to

habeas proceedings as explained *supra. Coleman*, 501 U.S. at 755, 111 S. Ct. 2546; *Finley*, 481 U.S. at 555, 107 S. Ct. 1990.

The Supreme Court has qualified *Coleman* by recognizing a "narrow exception," which allows a state prisoner to establish cause for his procedural default if he had inadequate assistance of counsel at initial-review collateral proceedings. *Martinez v. Ryan*, 566 U.S. 1, 9, 132 S.Ct. 1309, 1315, 182 L.Ed.2d 272 (2012). A petitioner's procedural default may be excused where "the state courts did not appoint counsel in the initial-review collateral proceedings for a claim of ineffective assistance at trial" or where "appointed counsel in the initial-review collateral proceeding…was ineffective under the standards of *Strickland*." *Id*. at 14. A petitioner seeking to establish cause under *Martinez* must also demonstrate the underlying ineffective assistance of trial counsel claim is a "substantial one," or in other words that the claim "has some merit." *Id.*

Here, Petitioner does not satisfy the *Martinez* exception. As explained *supra* the underlying ineffective assistance of trial counsel claim has no merit and thus is not a "substantial" claim. Additionally, the state did appoint PCRA counsel for Petitioner's initial-review collateral proceedings. (*See* Entry of Appearance, Doc. 161, at 356). The appointed PCRA counsel withdrew when he determined Petitioner's claims were "meritless." (Pet. to Withdraw, Doc. 161, at 365–377; Order Granting Pet. to Withdraw, Doc. 161, at 391). PCRA counsel's decision to withdraw does not constitute a deficient performance under *Strickland*

29

as it was objectively reasonable. Therefore, *Martinez* does not apply, and Petitioner cannot challenge his PCRA counsel's performance through his federal habeas petition.

The Magistrate Judge correctly denied this claim. Petitioner's Objections regarding ineffective assistance are overruled.

## J. Objection 15: Judicial Bias

Petitioner's fifteenth Objection argues the R&R should be "disregarded and stricken from the record" due to "Magistrate Judge Carlson's blatantly obvious Partiality toward the respondents, and prejudice to him and his filings that can only be interpreted as gross Bias." (Doc. 171-1, at 103–112). Petitioner's bold accusations have no factual support. Magistrate Judge Carlson's consideration of the state court proceedings in his R&R was fair, unbiased and comprehensive. Petitioner has suffered no prejudice as a result of Magistrate Judge Carlson's R&R. Petitioner's fifteenth Objection is meritless.

## K. Certificate of Appealability

The Magistrate Judge additionally recommended that a certificate of appealability ["COA"] should not issue in this case. (Doc. 163, at 51). Petitioner argues that the denial of a COA is prejudicial. (Doc. 171-1, at 103–105).

Pursuant to Section 2253, "Unless a circuit justice or judge issues a certificate of appealability an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). A COA may issue "only if the applicant

has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). A petitioner must "prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Id.* at 338(internal quotations omitted). If a district court denies a habeas petition on procedural grounds without reaching the merits of the constitutional claim, a COA should issue if the prisoner shows, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000).

As to the 2015 Habeas Petition, Petitioner has failed to make a substantial showing that he was denied a constitutional right. Jurists of reason would not find the result of this case debatable. Petitioner has failed to present a non-frivolous claim that his constitutional rights were denied. As explained *supra*, all of his claims were meritless. Therefore, the Magistrate Judge's recommendation that a COA should not issue is correct.

As to the 2016 Habeas Petition, which was denied on the procedural ground that it was filed outside of the statute of limitations, a COA should not issue. Jurists of reason

would not find it debatable that a case filed one year after the expiration of the statute of limitation should be dismissed.

### III. CONCLUSION

For the reasons set forth above, upon *de novo* review of the R&R (Doc. 163), the Court will adopt the R&R in its entirety. Petitioner failed to demonstrate that his state conviction violated his federal constitutional rights. Both of Begnoche's petitions for a writ of habeas corpus are denied and a certificate of appealability will not issue.  A separate Order follows.

Robert D. Mariani
United States District Judge